**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO:<br><br>*Susan Ferrara, et al. v. Ameriquest Mortgage Company, et al.*; Case No. 07 C 6867 | |

**DEFENDANT AMERIQUEST MORTGAGE COMPANY'S ANSWER
AND AFFIRMATIVE DEFENSES TO COMPLAINT**

Defendant AMERIQUEST MORTGAGE COMPANY ("Defendant"), by and through its attorneys, answers Plaintiff SUSAN FERRARA, et al's ("Plaintiffs") Complaint as follows.

**COMPLAINT**

**INTRODUCTION**

1.　Plaintiffs charge defendants with failure to honor valid rescission requests in violation of 15 U.S.C. § 1635. Plaintiffs also charge defendants (except Washington Mutual Bank and the Citigroup Mortgage defendants) with violation of applicable state law.

**ANSWER:** **Defendant admits that Plaintiff has filed a lawsuit against it. Defendant denies all remaining allegations in Paragraph 1. Defendant specifically denies that it violated the Truth in Lending Act and 15 U.S.C. § 1635 or state law.**

**JURISDICTION AND VENUE**

2.　This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under federal law. This Court has supplemental jurisdiction over plaintiffs' claims under state law

pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

**ANSWER:** **Defendant does not contest subject matter jurisdiction.  Defendant denies the remaining allegations in the paragraph.**

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

**ANSWER:** **Defendant denies that venue is proper in the Northern District of Illinois pursuant to the Multi-District Litigation panel's Transfer Order based on Federal and State Constitutional grounds, including but not limited to Due Process and Equal Protection under the law.  Defendant denies any remaining allegations in the paragraph.**

## PARTIES

4.  Plaintiffs are home owners who refinanced their mortgages in transactions with Ameriquest Mortgage Company.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiffs.**

5.  Defendant Ameriquest Mortgage Company originated plaintiffs' mortgages.  In connection with those refinancing transactions, Ameriquest Mortgage Company took security interests in plaintiffs' homes. Defendant AMC Mortgage Services Inc. serviced plaintiffs' mortgages.  Defendants ACC Capital Holdings and Ameriquest Mortgage Securities Inc. participated in the illegal scheme.  Defendant Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities Trust 2006-R1 and/or Ameriquest Securities Trust Series 2006-Rl is the owner/assignee of the Ferrara mortgage. Defendant Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R11 and/or Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R11 is the owner/assignee of the McDonald mortgage.

Defendant Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R3 and/or Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R3 is the owner/assignee of the Martindell mortgage. Defendant Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R2 and/or Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R2 is the owner/assignee of the Vigil mortgage. Washington Mutual Bank is the owner/assignee of the Haskins mortgage. U.S. Bank, N.A. as Trustee for Citigroup Mortgage Loan Trust 2006-AMCl and/or Citigroup Mortgage Loan Trust 2006-AMC l was the owner/assignee of the Kruger mortgage.

**ANSWER:**　　**Defendant objects to the term "assignee" as vague. Defendant admits that Ameriquest Mortgage Company originated Plaintiffs' loans. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required to such allegations, Defendant denies any liability to Plaintiffs. Defendant admits that Defendant Deutsche Bank National Trust Company serves as Trustee for Ameriquest Mortgage Securities Trust 2006-R1, which includes the Ferrara loan. Defendant admits that Defendant Deutsche Bank National Trust Company serves as Trustee for Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R11, which includes the McDonald loan. Defendant admits that Defendant Deutsche Bank National Trust Company serves as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R3, which includes the Martindell loan. Defendant admits that Defendant Deutsche Bank National Trust Company serves as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R2, which includes the Vigil loan. Defendant, upon review of the answer filed in this action by Defendant WM Specialty Mortgage LLC, is informed that Defendant WM Specialty Mortgage LLC "is the owner/assignee of the Haskins mortgage." Otherwise, Defendant is without knowledge or information sufficient to form a belief as to truth of the allegations of Paragraph 5 and on that basis denies such allegations.**

### COUNT ONE - TRUTH IN LENDING ACT

6.　　Plaintiffs incorporate paragraphs one through five above.

**ANSWER:**　　**Defendant restates its answers to Paragraphs 1-5 in answer to this paragraph.**

7. Ameriquest's disclosures to plaintiffs in connection with plaintiffs' mortgage refinancing transactions did not comply with the requirements of the Truth in Lending Act. More specifically, the disclosures were deficient in the following ways:

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

### Susan Ferrara

8. The Notice of Right to Cancel forms given to plaintiff Ferrara at the closing did not set forth the date that the rescission period expired, a violation of 12 C.F.R § 226.23(b)(1)(v). Ameriquest also misled plaintiff Ferrara as to the cost of credit by telling her that the interest rate and closing costs would be lower than they actually turned out to be.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### John Kruger

9. First, the Notice of Right to Cancel forms given to plaintiff Kruger at the closing did not set forth the date that the rescission period expired, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, by misleading plaintiff as to his closing costs and the cost of refinancing into a fixed rate loan, Ameriquest violated 12 C.F.R. § 226.18. Third, Ameriquest paid creditors Waterfield Financial and Wachovia more than the amounts actually owed. The overpayments should have been classified as finance charges. As a consequence, the finance charge and APR were materially understated.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

BN 1683254v1

### Gene McDonald

10.     First, the Notice of Right to Cancel forms provided to plaintiff McDonald did not provide the date on which the rescission period ended, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, Ameriquest gave plaintiff McDonald a document (APPLICATION DISCLOSURE) which stated that he was being charged $350 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." Stephen Stewart said something very similar to plaintiff over the telephone. These statements contradicted plaintiffs right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiff tried to cancel the transaction, Ameriquest misrepresented plaintiffs rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv). Third, by misleading plaintiff McDonald as to the interest rate he would be charged and by promising plaintiff a real sweet deal at a lower interest rate in two years, Ameriquest violated 12 C.F.R § 226.18.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Miriam Haskins

11.     First, Ameriquest did not provide Haskins with a sufficient number of properly completed Notice of Right to Cancel forms at the closing. Second, the date for expiration of the rescission period stated on the form was incorrect because Ameriquest changed the deal after the closing (so that the supposed closing did not really mark the consummation of the transaction). According to the settlement statement, the amount to be paid to Haskins' prior mortgage lender was to be $127,193.72; according to the disbursement ledger the amount paid to the prior

mortgage lender was only $122,091.57. Third, the amounts listed on the settlement statements to be paid to certain creditors (Washington Mutual and Citifinancial) included 3% padding adjustments. These padding adjustments constituted hidden finance charges, so that the stated finance charge and APR were materially inaccurate.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Donald and Wanda Martindell

12.    First, Ameriquest only provided the Martindells one Notice of Right to Cancel form and not two copies for each owner of the home as required. Second, Ameriquest told Mr. Martindell that he would have to pay the appraisal fee if he backed out of the deal; Ameriquest also gave Mr. Martindell two documents, both entitled APPLICATION DISCLOSURE, one of which stated that he was being charged $350 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation" and the other which stated that he was being charged $300 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." These statements contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv). Third, the Notice of Right to Cancel form given to Mr. Martindell lists Donald Martindell as the only borrower and creates the impression that only Mr. Martindell has the right to rescind the mortgage, whereas Mrs. Martindell also has that right. Fourth, by falsely assuring plaintiffs that

the mortgage interest rate would be fixed for three years, and creating the impression that they would be able to refinance without any penalty before the rate went up, Ameriquest misled plaintiffs as to the cost of credit in violation of 12 C.F.R. § 226.18.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Robert and Marlianna Vigil

13. First, the Notice of Right to Cancel forms delivered to the Vigils at the closing did not include the date that the rescission period expired. Second, Ameriquest did not provide plaintiffs with the requisite number of Notice of Right to Cancel forms, providing a total of two rather than two each as required by Regulation Z. Third, Ameriquest provided plaintiffs a document (**APPLICATION DISCLOSURE**) which said that they would owe $500 if they cancelled the deal, a statement which misrepresented the effects of rescission. Fourth, Ameriquest gave plaintiffs a document at the closing (Uniform Residential Loan Application) which said that the interest rate on their loan would be 7.990% and didn't disclose that the rate could go as high as 13.990%. Fifth, Ameriquest told plaintiffs that they would be able to refinance into a fixed rate loan before their mortgage interest rate adjusted upwards, thereby misleading plaintiffs as to the cost of credit.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

14. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right

to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

**ANSWER:** **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

15.  Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent rescission notices to Ameriquest and to the defendants who owned and serviced their respective mortgages. Defendants did not honor the rescission requests as required by federal law. Plaintiffs are entitled to rescission of their mortgage transactions plus other relief.

**ANSWER:** **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

## COUNT TWO -- VIOLATION OF STATE LAW

16.  Plaintiffs incorporate paragraphs one through fifteen above.

**ANSWER:** **Defendant restates its answers to Paragraphs 1-15 in answer to this paragraph.**

17.  In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance. Ameriquest baited plaintiffs into mortgage transactions by offering a relatively favorable set of terms and then switched to more expensive terms. More specifically:

**ANSWER:** **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

### Susan Ferrara

18.  In or about December 2005, plaintiff Susan Ferrara spoke repeatedly on the telephone to an Ameriquest representative from the Ameriquest branch in West Chester, Pennsylvania. The Ameriquest representative told plaintiff she would get a mortgage with an initial interest rate of 7.5% and that her closing costs would be around $5,000 or $6,000. Instead, Ameriquest gave plaintiff a mortgage with an initial interest rate of 7.99% (which could later go

as high as 13.99% depending on changes in the LIBOR rate) and assessed her settlement charges of $8,553.92.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### John Kruger

19. In or about April 2006, plaintiff John Kruger decided to refinance the mortgage on his home in Lancaster, Pennsylvania. Mr. Kruger spoke on the telephone to a representative of Ameriquest. The representative offered an adjustable rate mortgage but assured Mr. Kruger that in a year Mr. Kruger would be able to refinance again into a fixed rate mortgage at no or minimal additional costs. However, the mortgage actually provided to plaintiff included a substantial prepayment penalty for the fast three years so that when plaintiff later contacted Ameriquest about locking into a fixed rate loan, he was told that if he tried to refinance he would incur a prepayment penalty of $4,400 or $4,500. The Ameriquest representative also promised closing costs of $4,000 or $5,000. In fact, Ameriquest charged Mr. Kruger $10,431.90 in fees and points.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Gene McDonald

20. In or about October 2005, plaintiff Gene McDonald decided to refinance the mortgage on his home in Lexington, South Carolina and spoke repeatedly on the telephone to a representative of Ameriquest named Stephen A. Stewart. Mr. Stewart promised Mr. McDonald a mortgage with an interest rate in the 6.25% to 6.50% range that would be fixed for 30 years. Mr.

Stewart told Mr. McDonald not to worry about paying on debts that would be paid off pursuant to the mortgage refinancing. Mr. Stewart also said that if Mr. McDonald canceled the deal after the appraiser was called in, Mr. McDonald would be personally responsible for paying the appraisal fee. The closing took place on October 20, 2005, at Mr. McDonald's place of work, in his boss's office, during Mr. McDonald's half hour lunch break. Mr. McDonald had told Mr. Stewart that he only had a half hour lunch break and Mr. Stewart had assured him that would be plenty of time. Ameriquest's closing agent came to the closing with a stack of papers and kept putting documents in front of plaintiff, telling him to sign and saying that he could read the documents later. Mr. McDonald, feeling pressured, signed the documents without reading them. The terns of the deal had changed. Instead of the promised fixed interest rate of between 6.25% and 6.5%, there was now an adjustable rate mortgage with an initial interest rate of 7.6%, which could increase to as much as 13.6%, depending on changes in the LIBOR rate. Ameriquest charged Mr. McDonald $10,598.55 in fees and points in exchange for this loan.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Miriam Haskins

21. In or about January 2005, plaintiff Miriam Haskins spoke repeatedly on the telephone to an Ameriquest representative named Annette about refinancing the mortgage on her home. Ms. Haskins was told that the initial interest rate on her loan would be 9%; it turned out to start out at 9.75%.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Donald and Wanda Martindell

- 10 -

22.     Plaintiff Donald Martindell works as an administrator for the Moody Bible Institute in Chicago. His wife, plaintiff Wanda Martindell, does clerical work for a mission in Linnwood, Illinois. Mr. and Mrs. Martindell own a home in Highland, Indiana, where they live with their two daughters.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

23.     In early 2005, the Martindells decided to refinance the mortgage on their home. Mr. Martindell spoke repeatedly to a representative of Ameriquest named Brian Lawlor. Mr. Lawlor promised the Martindells a mortgage with an interest rate in the 6% to 7% range that would be fixed for three years. At the time, Mr. Martindell's credit score was in the 600s. Mr. Lawlor told Mr. Martindell that his credit score would improve and that, as a consequence, plaintiffs would be able to refinance to a mortgage with a lower interest rate before the mortgage became adjustable. Mr. Lawlor also told Mr. Martindell that Ameriquest's closing costs were competitive and would be rolled into the loan. Mr. Lawlor also told Mr. Martindell that there was an appraisal fee, which would be rolled into the loan that was non-refundable.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

24.     Ameriquest prepared an adjustable rate note with an initial interest rate of 6.5%, but which became adjustable after two years (rather than three as promised) and which eventually could go as high as 12.5%, depending on changes in the LIBOR rate. The mortgage also provided for a substantial prepayment penalty that did not expire for three years. In exchange for this loan, Ameriquest assessed plaintiffs fees and points of $9,833.27 (more than 6% of the $153,000 loan amount).

**ANSWER:     The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs. Otherwise, Defendant is without knowledge or information sufficient to form**

>   a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.

25. At the closing, Mr. Lawlor told plaintiffs that they had to go with a two year ARM because of plaintiffs' credit score and the loan to value ratio. Mr. Lawlor told plaintiffs not to worry because they would be able to refinance within the two years. Mr. Lawlor did not mention that there was a three year prepayment penalty and plaintiffs did not notice the provision when they signed the papers.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

26. In 2007, when plaintiffs were seeking to refinance their mortgage, they became aware of the three year prepayment penalty. Mr. Martindell called to complain, was told that he did have a three year prepayment penalty and was given the opportunity to complain in writing. Mr. Martindell sent a letter to Ameriquest which stated in part:

>   Please consider this document to serve as a formal request/appeal for AMC to waive this loan's prepayment penalty.
>
>   In January 2005, during negotiations of this loan with Ameriquest (Merrrillville, IN Office) Agent Brian Lawlor, a 3 year ARM was the only type of mortgage about which there was conversation.
>
>   Upon arrival at closing, he informed us that he had switched it to a 2 Year ARM. We were verbally assured that we should not be concerned, because we could easily refinance to a fixed mortgage after 2 years. There was no explanation of a 3 year requirement to avoid a hefty penalty.
>
>   Our rate went from 6.5% to 8.5% in April, so we began looking for refinancing. We were shocked to find a $5047.11 prepayment penalty included in the payoff amount we requested.
>
>   While we are not financial wizards, I am confident that we would have balked at the closing table had we been informed that this was **2 Year ARM .... BUT** you have to keep it for **3 years**.
>
>   We believe that we were deceived, or at the very least, misled into this situation by Ameriquest.
>
>   Therefore, we respectfully request that AMC rescind the Prepayment Penalty on our loan at this time so that we may pursue

- 12 -

   refinancing.

The Martindells did not receive a response.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

  27. Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under applicable state law.

**ANSWER:** **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

  28. Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

**ANSWER:** **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

  29. The other defendants (except Washington Mutual Bank and the Citigroup Mortgage defendants) knowingly aided and abetted this illegal behavior by Ameriquest, and knowingly participated in an illegal conspiracy and joint venture with Ameriquest, and are therefore also liable to plaintiffs.

**ANSWER:** **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

## AFFIRMATIVE DEFENSES

  1. Plaintiffs' purported causes of action fail to state a claims upon which relief may be granted.

  2. Plaintiffs' claims are barred by the applicable statute of limitations.

  3. Plaintiffs' claims are barred in whole or in part under the doctrine of estoppel, laches and/or waiver.

- 14 -

4. Plaintiffs' claims are barred in whole or in part, on the ground that if any law was violated in any manner whatsoever, such violation, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not Defendant, and any such intervening or superseding action of said parties and/or persons or entities bars Plaintiffs' recovery.

5. Defendant alleges that at all times relevant to this action Defendant acted within the course and scope of reasonable commercial standards and legitimate business transactions.

6. Plaintiffs' claims are barred in whole or in part, because Plaintiffs would be unjustly enriched if allowed to recover on the Complaint.

7. Defendant alleges that no officer, director, or managing agent of Defendant ratified the conduct alleged by Plaintiffs.

8. Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.

9. Plaintiffs' claims are barred in whole or in part, because Plaintiffs misrepresented their credit, income or other information association with obtaining the loan.

10. Plaintiffs' claims are barred or limited because pursuant to 15 U.S.C. § 1640(c) the violations alleged were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

11. Plaintiffs are not entitled to rescind the mortgage loan under the Truth in Lending Act, or to obtain any statutory damages because all required disclosures and notices were accurately and timely made, and even if the disclosures were inaccurate, the inaccuracies are within the applicable tolerances.

12. Plaintiffs are not entitled to statutory damages, or actual damages for failure to rescind, because no alleged disclosure error is apparent on the face of the disclosure documents.

13. If it should be deemed that Plaintiffs are entitled to rescission, any obligation on the part of the holder of the loan to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiffs' reimbursement or other

return to the holder of the loan of all funds disbursed on Plaintiffs' behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity. Any obligation on the part of the holder of the loan to rescind and to release any lien is conditioned upon Plaintiffs reimbursing or otherwise returning all funds disbursed on their behalf to the holder of the loan in connection with the subject loan, less any finance charges.

14. Defendant alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses. Defendant reserves its right to file an amended answer asserting additional defenses, and/or to file a counter or cross-complaint in the event that discovery indicates that either is appropriate.

WHEREFORE, Defendant requests that this Court enter judgment in its favor and against Plaintiffs, award Defendant its costs, and provide such further and additional relief as it deems just and appropriate.

Respectfully submitted,

DATED: August 26, 2008

By: /s/ Bernard E. LeSage
*Attorneys for Ameriquest Mortgage Company*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

BN 1683254v1

- 16 -

## CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 26th day of August 2008, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:     /s/ Bernard E. LeSage

BN 1683254v1