## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: | |
| *Susan Ferrara, et al. v. Ameriquest Mortgage Company, et al.*; Case No. 07 C 6867 | |

## DEFENDANT U.S. BANK, N.A., AS TRUSTEE'S
## ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant U.S. BANK, N.A., as Trustee ("Defendant"), by and through its attorneys,

answers Plaintiff SUSAN FERRARA ("Plaintiff") Complaint as follows.

## COMPLAINT

### INTRODUCTION

1.      Plaintiffs charge defendants with failure to honor valid rescission requests in

violation of 15 U.S.C. § 1635. Plaintiffs also charge defendants (except Washington Mutual

Bank and the Citigroup Mortgage defendants) with violation of applicable state law.

**ANSWER:**  **To the extent an answer is required, Defendant admits that Plaintiffs have
filed this lawsuit against it.  Defendant denies any wrongdoing and denies
any liability to Plaintiffs.**

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to Title 28 of the United States Code,

Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under

federal law. This Court has supplemental jurisdiction over plaintiffs' claims under state law

- 1 -

BN 2218362v1

pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28

U.S.C. § 1367.

**ANSWER:    Defendant does not dispute subject matter jurisdiction. Defendant denies any remaining allegations of Paragraph 2.**

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the

defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has

issued an order centralizing predatory lending litigation against Ameriquest in this district before

Judge Aspen.

**ANSWER:    Defendant does not dispute venue.  Defendant admits that this action has been transferred to the Northern District of Illinois by an order of the Judicial Panel on Multi-District Litigation.  Defendant denies any remaining allegations of Paragraph 3.**

## PARTIES

4.      Plaintiffs are home owners who refinanced their mortgages in transactions with

Ameriquest Mortgage Company.

**ANSWER:    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 and on that basis denies such allegations.**

5.      Defendant Ameriquest Mortgage Company originated plaintiffs' mortgages. In

connection with those refinancing transactions, Ameriquest Mortgage Company took security

interests in plaintiffs' homes. Defendant AMC Mortgage Services Inc. serviced plaintiffs'

mortgages. Defendants ACC Capital Holdings and Ameriquest Mortgage Securities Inc.

participated in the illegal scheme. Defendant Deutsche Bank National Trust Company as Trustee

for Ameriquest Mortgage Securities Trust 2006-R1 and/or Ameriquest Securities Trust Series

2006-Rl is the owner/assignee of the Ferrara mortgage. Defendant Deutsche Bank National Trust

Company as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through

Certificates, Series 2005-R11 and/or Ameriquest Mortgage Securities Inc., Asset Backed Pass-

BN 2218362v1

Through Certificates, Series 2005-R11 is the owner/assignee of the McDonald mortgage.

Defendant Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage

Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R3 and/or Ameriquest

Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R3 is the

owner/assignee of the Martindell mortgage. Defendant Deutsche Bank National Trust Company

as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates,

Series 2005-R2 and/or Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through

Certificates, Series 2005-R2 is the owner/assignee of the Vigil mortgage. Washington Mutual

Bank is the owner/assignee of the Haskins mortgage. U.S. Bank, N.A. as Trustee for Citigroup

Mortgage Loan Trust 2006-AMCl and/or Citigroup Mortgage Loan Trust 2006-AMC l was the

owner/assignee of the Kruger mortgage.

**ANSWER:** **Defendant admits that it serves as trustee for the securitization, Citigroup Mortgage Loan Trust 2006-AMCI, which includes the Kruger loan. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 5 and on that basis denies such allegations.**

## COUNT ONE - TRUTH IN LENDING ACT

6.      Plaintiffs incorporate paragraphs one through five above.

**ANSWER:** **Defendant incorporates its answers to paragraphs one through five in response to this paragraph.**

7.      Ameriquest's disclosures to plaintiffs in connection with plaintiffs' mortgage

refinancing transactions did not comply with the requirements of the Truth in Lending Act. More

specifically, the disclosures were deficient in the following ways:

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 and on that basis denies such allegations.**

BN 2218362v1

**Susan Ferrara**

8.      The Notice of Right to Cancel forms given to plaintiff Ferrara at the closing did

not set forth the date that the rescission period expired, a violation of 12 C.F.R § 226.23(b)(1)(v).

Ameriquest also misled plaintiff Ferrara as to the cost of credit by telling her that the interest rate

and closing costs would be lower than they actually turned out to be.

**ANSWER:**    **To the extent Paragraph 8 states legal conclusions, no answer is required.  If
an answer is required, Defendant is without knowledge or information
sufficient to form a belief as to the truth of the allegations of this paragraph
and on that basis denies such allegations.**

**John Kruger**

9.      First, the Notice of Right to Cancel forms given to plaintiff Kruger at the closing

did not set forth the date that the rescission period expired, a violation of 12 C.F.R.

§ 226.23(b)(1)(v). Second, by misleading plaintiff as to his closing costs and the cost of

refinancing into a fixed rate loan, Ameriquest violated 12 C.F.R. § 226.18. Third, Ameriquest

paid creditors Waterfield Financial and Wachovia more than the amounts actually owed. The

overpayments should have been classified as finance charges. As a consequence, the finance

charge and APR were materially understated.

**ANSWER:**    **To the extent Paragraph 9 states legal conclusions, no answer is required.  If
an answer is required, Defendant is without knowledge or information
sufficient to form a belief as to the truth of the allegations of this paragraph
and on that basis denies such allegations.  Defendant specifically denies any
wrongdoing and denies any liability to Plaintiff.**

**Gene McDonald**

10.     First, the Notice of Right to Cancel forms provided to plaintiff McDonald did not

provide the date on which the rescission period ended, a violation of 12 C.F.R. § 226.23(b)(1)(v).

Second, Ameriquest gave plaintiff McDonald a document (APPLICATION DISCLOSURE)

which stated that he was being charged $350 for an appraisal/property valuation and that this

"deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the

appraisal/property valuation." Stephen Stewart said something very similar to plaintiff over the

telephone. These statements contradicted plaintiffs right to rescind the transaction and get back

"any money or property that has been given to anyone in connection with the transaction" 12

C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains

that the words "any money or property" would include an appraisal fee. By representing the

appraisal fee was nonrefundable if plaintiff tried to cancel the transaction, Ameriquest

misrepresented plaintiffs rescission rights, thereby making the rescission notice defective under

12 C.F.R. § 226.23(b)(1)(iv). Third, by misleading plaintiff McDonald as to the interest rate he

would be charged and by promising plaintiff a real sweet deal at a lower interest rate in two

years, Ameriquest violated 12 C.F.R § 226.18.

**ANSWER:** **To the extent Paragraph 10 states legal conclusions, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.  Defendant specifically denies any wrongdoing and denies any liability to Plaintiff.**

### Miriam Haskins

11.    First, Ameriquest did not provide Haskins with a sufficient number of properly

completed Notice of Right to Cancel forms at the closing. Second, the date for expiration of the

rescission period stated on the form was incorrect because Ameriquest changed the deal after the

closing (so that the supposed closing did not really mark the consummation of the transaction).

According to the settlement statement, the amount to be paid to Haskins' prior mortgage lender

was to be $127,193.72; according to the disbursement ledger the amount paid to the prior

mortgage lender was only $122,091.57. Third, the amounts listed on the settlement statements to

be paid to certain creditors (Washington Mutual and Citifinancial) included 3% padding

adjustments. These padding adjustments constituted hidden finance charges, so that the stated

finance charge and APR were materially inaccurate.

**ANSWER:** **To the extent Paragraph 11 states legal conclusions, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph**

- 5 -

**and on that basis denies such allegations.  Defendant specifically denies any wrongdoing and denies any liability to Plaintiff.**

### Donald and Wanda Martindell

12.     First, Ameriquest only provided the Martindells one Notice of Right to Cancel form and not two copies for each owner of the home as required. Second, Ameriquest told Mr. Martindell that he would have to pay the appraisal fee if he backed out of the deal; Ameriquest also gave Mr. Martindell two documents, both entitled APPLICATION DISCLOSURE, one of which stated that he was being charged $350 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation" and the other which stated that he was being charged $300 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation."  These statements contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv). Third, the Notice of Right to Cancel form given to Mr. Martindell lists Donald Martindell as the only borrower and creates the impression that only Mr. Martindell has the right to rescind the mortgage, whereas Mrs. Martindell also has that right. Fourth, by falsely assuring plaintiffs that the mortgage interest rate would be fixed for three years, and creating the impression that they would be able to refinance without any penalty before the rate went up, Ameriquest misled plaintiffs as to the cost of credit in violation of 12 C.F.R. § 226.18.

**ANSWER:     To the extent Paragraph 12 states legal conclusions, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph**

**and on that basis denies such allegations.  Defendant specifically denies any wrongdoing and denies any liability to Plaintiff.**

### Robert and Marlianna Vigil

13.    First, the Notice of Right to Cancel forms delivered to the Vigils at the closing did not include the date that the rescission period expired. Second, Ameriquest did not provide plaintiffs with the requisite number of Notice of Right to Cancel forms, providing a total of two rather than two each as required by Regulation Z. Third, Ameriquest provided plaintiffs a document (**APPLICATION DISCLOSURE**) which said that they would owe $500 if they cancelled the deal, a statement which misrepresented the effects of rescission. Fourth, Ameriquest gave plaintiffs a document at the closing (Uniform Residential Loan Application) which said that the interest rate on their loan would be 7.990% and didn't disclose that the rate could go as high as 13.990%. Fifth, Ameriquest told plaintiffs that they would be able to refinance into a fixed rate loan before their mortgage interest rate adjusted upwards, thereby misleading plaintiffs as to the cost of credit.

**ANSWER:    To the extent Paragraph 13 states legal conclusions, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.  Defendant specifically denies any wrongdoing and denies any liability to Plaintiff.**

14.    Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

**ANSWER:    Because Paragraph 14 states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

BN 2218362v1

15.    Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent rescission notices to Ameriquest and to the defendants who owned and serviced their respective mortgages. Defendants did not honor the rescission requests as required by federal law. Plaintiffs are entitled to rescission of their mortgage transactions plus other relief.

**ANSWER:**    **Because Paragraph 15 states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

## COUNT TWO -- VIOLATION OF STATE LAW

16.    Plaintiffs incorporate paragraphs one through fifteen above.

**ANSWER:**    **Defendant incorporates its answers to paragraphs one through fifteen in response to this paragraph.**

17.    In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance. Ameriquest baited plaintiffs into mortgage transactions by offering a relatively favorable set of terms and then switched to more expensive terms. More specifically:

**ANSWER:**    **Because Paragraph 17 states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

### Susan Ferrara

18.    In or about December 2005, plaintiff Susan Ferrara spoke repeatedly on the telephone to an Ameriquest representative from the Ameriquest branch in West Chester, Pennsylvania. The Ameriquest representative told plaintiff she would get a mortgage with an initial interest rate of 7.5% and that her closing costs would be around $5,000 or $6,000. Instead, Ameriquest gave plaintiff a mortgage with an initial interest rate of 7.99% (which could later go as high as 13.99% depending on changes in the LIBOR rate) and assessed her settlement charges of $8,553.92.

BN 2218362v1

**ANSWER:**    **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 and on that basis denies such allegations.**

### John Kruger

19.    In or about April 2006, plaintiff John Kruger decided to refinance the mortgage on his home in Lancaster, Pennsylvania. Mr. Kruger spoke on the telephone to a representative of Ameriquest. The representative offered an adjustable rate mortgage but assured Mr. Kruger that in a year Mr. Kruger would be able to refinance again into a fixed rate mortgage at no or minimal additional costs. However, the mortgage actually provided to plaintiff included a substantial prepayment penalty for the fast three years so that when plaintiff later contacted Ameriquest about locking into a fixed rate loan, he was told that if he tried to refinance he would incur a prepayment penalty of $4,400 or $4,500. The Ameriquest representative also promised closing costs of $4,000 or $5,000. In fact, Ameriquest charged Mr. Kruger $10,431.90 in fees and points.

**ANSWER:**    **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 and on that basis denies such allegations.**

### Gene McDonald

20.    In or about October 2005, plaintiff Gene McDonald decided to refinance the mortgage on his home in Lexington, South Carolina and spoke repeatedly on the telephone to a representative of Ameriquest named Stephen A. Stewart. Mr. Stewart promised Mr. McDonald a mortgage with an interest rate in the 6.25% to 6.50% range that would be fixed for 30 years. Mr. Stewart told Mr. McDonald not to worry about paying on debts that would be paid off pursuant to the mortgage refinancing. Mr. Stewart also said that if Mr. McDonald canceled the deal after the appraiser was called in, Mr. McDonald would be personally responsible for paying the appraisal fee. The closing took place on October 20, 2005, at Mr. McDonald's place of work, in his boss's office, during Mr. McDonald's half hour lunch break. Mr. McDonald had told Mr.

BN 2218362v1

Stewart that he only had a half hour lunch break and Mr. Stewart had assured him that would be plenty of time. Ameriquest's closing agent came to the closing with a stack of papers and kept putting documents in front of plaintiff, telling him to sign and saying that he could read the documents later. Mr. McDonald, feeling pressured, signed the documents without reading them. The terns of the deal had changed. Instead of the promised fixed interest rate of between 6.25% and 6.5%, there was now an adjustable rate mortgage with an initial interest rate of 7.6%, which could increase to as much as 13.6%, depending on changes in the LIBOR rate. Ameriquest charged Mr. McDonald $10,598.55 in fees and points in exchange for this loan.

**ANSWER:**    **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 and on that basis denies such allegations.**

### Miriam Haskins

21.    In or about January 2005, plaintiff Miriam Haskins spoke repeatedly on the telephone to an Ameriquest representative named Annette about refinancing the mortgage on her home. Ms. Haskins was told that the initial interest rate on her loan would be 9%; it turned out to start out at 9.75%.

**ANSWER:**    **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 and on that basis denies such allegations.**

### Donald and Wanda Martindell

22.    Plaintiff Donald Martindell works as an administrator for the Moody Bible Institute in Chicago. His wife, plaintiff Wanda Martindell, does clerical work for a mission in Linnwood, Illinois. Mr. and Mrs. Martindell own a home in Highland, Indiana, where they live with their two daughters.

**ANSWER:**    **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 and on that basis denies such allegations.**

BN 2218362v1

23.    In early 2005, the Martindells decided to refinance the mortgage on their home. Mr. Martindell spoke repeatedly to a representative of Ameriquest named Brian Lawlor. Mr. Lawlor promised the Martindells a mortgage with an interest rate in the 6% to 7% range that would be fixed for three years. At the time, Mr. Martindell's credit score was in the 600s. Mr. Lawlor told Mr. Martindell that his credit score would improve and that, as a consequence, plaintiffs would be able to refinance to a mortgage with a lower interest rate before the mortgage became adjustable. Mr. Lawlor also told Mr. Martindell that Ameriquest's closing costs were competitive and would be rolled into the loan. Mr. Lawlor also told Mr. Martindell that there was an appraisal fee, which would be rolled into the loan that was non-refundable.

**ANSWER:    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 and on that basis denies such allegations.**

24.    Ameriquest prepared an adjustable rate note with an initial interest rate of 6.5%, but which became adjustable after two years (rather than three as promised) and which eventually could go as high as 12.5%, depending on changes in the LIBOR rate. The mortgage also provided for a substantial prepayment penalty that did not expire for three years. In exchange for this loan, Ameriquest assessed plaintiffs fees and points of $9,833.27 (more than 6% of the $153,000 loan amount).

**ANSWER:    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 and on that basis denies such allegations.**

25.    At the closing, Mr. Lawlor told plaintiffs that they had to go with a two year ARM because of plaintiffs' credit score and the loan to value ratio. Mr. Lawlor told plaintiffs not to worry because they would be able to refinance within the two years. Mr. Lawlor did not mention that there was a three year prepayment penalty and plaintiffs did not notice the provision when they signed the papers.

BN 2218362v1

**ANSWER:**   **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25 and on that basis denies such allegations.**

26.    In 2007, when plaintiffs were seeking to refinance their mortgage, they became

aware of the three year prepayment penalty. Mr. Martindell called to complain, was told that he

did have a three year prepayment penalty and was given the opportunity to complain in writing.

Mr. Martindell sent a letter to Ameriquest which stated in part:

> Please consider this document to serve as a formal request/appeal for AMC to waive this loan's prepayment penalty.
>
> In January 2005, during negotiations of this loan with Ameriquest (Merrrillville, IN Office) Agent Brian Lawlor, a 3 year ARM was the only type of mortgage about which there was conversation.
>
> Upon arrival at closing, he informed us that he had switched it to a 2 Year ARM. We were verbally assured that we should not be concerned, because we could easily refinance to a fixed mortgage after 2 years. There was no explanation of a 3 year requirement to avoid a hefty penalty.
>
> Our rate went from 6.5% to 8.5% in April, so we began looking for refinancing. We were shocked to find a $5047.11 prepayment penalty included in the payoff amount we requested.
>
> While we are not financial wizards, I am confident that we would have balked at the closing table had we been informed that this was **2 Year ARM .... BUT** you have to keep it for **3 years**.
>
> We believe that we were deceived, or at the very least, misled into this situation by Ameriquest.
>
> Therefore, we respectfully request that AMC rescind the Prepayment Penalty on our loan at this time so that we may pursue refinancing.

The Martindells did not receive a response.

**ANSWER:**   **Because the referenced document speaks for itself, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 and on that basis denies such allegations.**

27.    Ameriquest's false and misleading statements to plaintiffs violated plaintiffs'

rights under applicable state law.

- 12 -

BN 2218362v1

**ANSWER:**    **Because Paragraph 27 states a legal conclusion, no answer is required. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiff.**

28.    Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

**ANSWER:**    **Because Paragraph 28 states a legal conclusion, no answer is required. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiff.**

29.    The other defendants (except Washington Mutual Bank and the Citigroup Mortgage defendants) knowingly aided and abetted this illegal behavior by Ameriquest, and knowingly participated in an illegal conspiracy and joint venture with Ameriquest, and are therefore also liable to plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

      a.    canceling the appropriate defendants' security interests in plaintiffs' homes and ordering those defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

      b.    awarding appropriate statutory damages against Ameriquest;

      c.    awarding plaintiffs costs, penalties, and attorneys fees;

      d.    awarding plaintiffs actual and punitive damages (except against Washington Mutual Bank and the U.S. Bank, N.A. defendants);

      e.    granting such other relief as the Court deems just and proper.

**ANSWER:**    **Because Paragraph 29 states a legal conclusion, no answer is required. If an answer is required, Defendant denies any wrongdoing, denies any liability to Plaintiffs and denies that Plaintiffs are entitled to damages.**

- 13 -

## AFFIRMATIVE DEFENSES

1.      Plaintiffs' purported cause of action fails to state a claim upon which relief may be granted.

2.      Plaintiffs' claims are barred by the applicable statute of limitations.

3.      Plaintiffs' claims are barred in whole or in part under the doctrine of estoppel, laches and/or waiver.

4.      Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

5.      Plaintiffs' claims are barred by the applicable statute of frauds.

6.      Plaintiffs' claims are barred in whole or in part because they have failed to mitigate their damages.

7.      Plaintiffs' claims are barred, in whole or in part, because each and every purported cause of action is uncertain.

8.      Plaintiffs' claims are barred, in whole or in part, because any acts or failure to act on the part of Defendant were excused by the actions of Plaintiffs or others.

9.      Plaintiffs' claims are barred in whole or in part, on the ground that if Plaintiffs were damaged or a statute was violated in any manner whatsoever, such damage or violation, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not Defendant, and any such intervening or superseding action of said parties and/or persons or entities bars Plaintiffs' recovery.

10.      Plaintiffs, by their knowledge, statements and/or conduct, have consented and/or acquiesced to the alleged acts and/or omissions of Defendant described in the Complaint.

11.      As to each cause of action, Defendant is entitled to an offset.

12.      Plaintiffs' claims are barred in whole or in part, because Defendant has committed no act or omission causing any damage to Plaintiffs.

13.      Plaintiffs' claims are barred in whole or in part, because Plaintiffs expressly, ostensibly and/or implicitly authorized or ratified the transactions at issue.

- 14 -

14.     Plaintiffs' claims are barred in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover on the Complaint.

15.     Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.

16.     Plaintiff's claims are barred in whole or in part, because they are a member of a prior settlement or class that released some or all claims alleged by Plaintiffs.

17.     Defendant alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses. Defendant reserves its right to file an amended answer asserting additional defenses, and/or to file a counter or cross-complaint in the event that discovery indicates that either is appropriate.

**PRAYER**

Defendant prays this court to:

1.     Dismiss plaintiffs' Complaint;

2.     Enter judgment for Defendant and against Plaintiffs in this action;

3.     Award Defendant its costs of suit; and

4.     Grant Defendant any and all further and additional relief as it deems just and appropriate.


Respectfully submitted,

DATED:  September 8, 2008            By: /s/ Bernard E. LeSage
                                         *Attorneys for  US Bank, N.A., as Trustee*

                                     Bernard E. LeSage, Esq.
                                     Sarah K. Andrus, Esq.
                                     BUCHALTER NEMER, a P.C.
                                     1000 Wilshire Boulevard, Suite 1500
                                     Los Angeles, CA 90017-2457
                                     Telephone: (213) 891-0700
                                     Facsimile: (213) 896-0400

BN 2218362v1

- 16 -

## CERTIFICATE OF SERVICE

I, Connie Madrigal, hereby certify that on this 8th day of September 2008, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:      /s/  Connie Madrigal

BN 2218362v1